IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ORLANDO J. SIERRA-MERCADO,<br><br>Defendant. | CRIMINAL NO. 12-215 (DRD)<br><br>CRIMINAL NO. 12-233 (CCC) |

**ORDER OF DETENTION**

On March 22, 2012, a grand jury returned an indictment in case 12-215 (DRD) against Orlando J. Sierra-Mercado (hereinafter referred to as "defendant" or "Sierra-Mercado") and three other individuals. (D.E. 3 in case 12-215 (DRD)). Sierra-Mercado was charged of conspiring to commit bank fraud in violation of Title 18, United States Code, §§ 1344 and 1349, conspiring to submit a false statement to a financial institution in violation of Title 18, United States Code, §§ 1014 and 371, aiding and abetting others to submit a false statement to a financial institution in violation of Title 18, United States Code, §§1014 and 2, and of engaging or attempting to engage in a monetary transaction by, through or to a financial institution of a value greater than $10,000 in criminally derived property in violation of Title 18, United States Code §1957. The first three offenses occurred, according to the indictment, between December 1, 2007 and February 5, 2008, while the last one transpired on January 30, 2008.

On March 28, 2012, a grand jury returned an indictment against Sierra-Mercado in case 12-233 (CCC). This indictment contains a single count against Sierra-Mercado, charging him with conspiring to import 5 kilograms or more of cocaine and 1 kilogram or more of heroin into the United States at some point during the year 2006, but not later than March 22, 2006. (D.E. 13 in

case 12-233 (CCC)).

On March 28, 2012, a bail hearing was held regarding both of the cases previously mentioned. (D.E. 26 in case 12-215 (DRD).[1] Due to the nature of the allegations in case 12-233 (CCC), defendant is presumed a risk of flight and a danger to the community in view of the fact that a grand jury, through an indictment, has found probable cause to believe that Sierra-Mercado has committed an offense for which he may receive a maximum sentence of life imprisonment under the Controlled Substances Act. See 21 U.S.C. §801 et seq. and 18 U.S.C. §3142(e). Defendant "must produce only 'some evidence' to rebut this presumption. When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." U.S. v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). For the reasons detailed below, the undersigned finds that conditions of release could be fashioned to reasonably assure the defendant's appearance to further court proceedings. The opposition conclusion, however, is reached with respect to the concerns regarding the safety of the community.

The procedural history regarding the indictment in case 12-233 (CCC) charging a conspiracy to import controlled substances is atypical. The circumstances of this charge revolve around a drug load of 222 kilograms of cocaine and 38 kilograms of heroin that was found on March 22, 2006 inside a residence owned by Sierra-Mercado and his former spouse, Keila M. Rivera. (D.E. 3-1 in

---

[1] A letter from defense counsel Linda George was delivered to the undersigned's chambers on the same day that the detention hearing was scheduled to be held. (D.E. 23-1 in case 12-215 (DRD). This letter, however, was returned to defense counsel during the hearing as a motion should have been filed electronically presenting defendant's arguments, just as on March 27, 2012 (the day before the detention hearing) a "Motion to Reschedule Preliminary Hearing and to Compel Attendance of Witness at Hearing" was filed electronically. (D.E. 11 at 12-233 (CCC)). Nevertheless, defendant was given the opportunity to file a motion raising the arguments contained in that letter and he was also given the opportunity during the detention hearing to present arguments – regardless of whether they were raised or not in the letter – pertinent to the matter of bail. (D.E. 23 in case 12-215 (DRD) and D.E. 26 in case 12-215 (DRD) at 5-6). Some of the exhibits in the motion for bail, however, are illegible. (D.E. 16-1 at 54 and 60-64 in case 12-233 (CCC)).

12-233 (CCC)).² The residence was for sale at the time and the drugs were found inside the master bedroom closet while a realtor was showing the property to a prospective buyer. Id. For more than four years after the seizure of these drugs, no charges were brought against Sierra-Mercado regarding this incident. On August 19, 2010, however, a grand jury returned an indictment against Sierra-Mercado with a charge identical to that in case 12-233(CCC), namely conspiracy to import controlled substances during the first quarter of the year 2006. See United States v. Sierra-Mercado, 10-291 (CCC) (D.E. 2). The government, however, did not rush to arrest Sierra-Mercado. Instead, a judgment of discharge was entered on October 13, 2011, dismissing the case in case 10-291 (CCC) without prejudice. (D.E. 10 in case 10-291(CCC). Since case 10-291 (CCC) was not unsealed until April 11, 2012 (D.E. 12 in case 10-291(CCC)) and Sierra-Mercado was never arrested pursuant to the arrest warrant issued in said case, there is no reason to believe that Sierra-Mercado was ever aware that he had been charged in the year 2010 due to the alleged conspiracy to import controlled substances in 2006.³

Although certainly the potential for risk of flight increments once an individual becomes aware that he is facing felony charges (and as to Sierra Mercado he is facing serious allegations in both 12-215 (DRD) and 12-233 (CCC)), after reviewing all the evidence presented at the bail hearing the undersigned concludes that Sierra-Mercado has rebutted the presumption of risk of flight triggered by the indictment in case 12-233 (CCC). Defendant, a former police officer of the Puerto

---

²Various references are being made in this order to the criminal complaint preceding the indictment in case 12-233 (CCC) in light of the fact that defendant explicitly made reference to the same during the bail hearing. (E.g., D.E. 26 in case 12-215 (DRD) at 13). Although initially there appeared to be inconsistencies in the amounts of the controlled substances as detailed in the affidavit in support of the criminal complaint and those proffered during the bail hearing, these small discrepancies in the drug quantity amounts are immaterial for purposes of the issues at bar. In any event, eventually the government's proffer summarized the quantity of controlled substances as in excess of 200 kilograms of cocaine and "close to forty" kilograms of heroin, which is not inconsistent with the affidavit in support of the criminal complaint. (D.E. 26 at 16-17 in case 12-215 (DRD)).

³Had Sierra-Mercado been charged on or about March 22, 2006, the date when the drug load was found at his residence, he should not have been difficult to locate. According to the Pretrial Services Report, Sierra-Mercado was on probation at the state level between March 24, 1998 and March 24, 2006.

Rico Police Department, is a forty-one year old U.S. Citizen, born in Cidra, Puerto Rico. His parents and both of his siblings reside in Cidra. He has two children from his first marital relationship and a four-year old child from his current consensual relationship that reside in Cidra. Therefore, the defendant has family ties to this jurisdiction. Sierra-Mercado has also lived a substantial portion of his life in Puerto Rico, and never outside of the jurisdiction of the United States. With the exception of a three year period when he was in Florida, Sierra-Mercado has resided all his life in Cidra.[4] Only three short trips outside of the United States to the Bahamas in 2006, the Dominican Republic in 2009, and Antigua on 2010 have been brought to the attention of the court. Defendant has also had a history of employment in Puerto Rico. According to the Pretrial Services Report, defendant was the owner of a business called Blue Island Cafeteria in Cidra, Puerto Rico, between 1993 and 1996, and the owner of a vehicle accessories shop called Speedway in Caguas, Puerto Rico, between 1996 and 2002, although this information was only partially verified by the U.S. Probation Office.[5] Moreover, no substance abuse history has been reported, and defendant yielded negative results to all drugs tested. For a period of eight years between March 24, 1998 and March 24, 2006, defendant was on probation at the state level, which according to the Pretrial Services Report, was completed satisfactorily and no issues of failure to appear to court proceedings were reported. In addition, had Sierra-Mercado wanted to flee the jurisdiction of the United States once he found out of the intervention of law enforcement authorities at his residence back in March 22, 2006, he had six full years to do so, as he was not arrested until March 23, 2012 pursuant to a criminal complaint filed against him. (D.E. 3 and 4 in case 12-233 (CCC)). Yet, he did not do so. Finally, defendant has

---

[4] The government's proffer that it has evidence that Sierra-Mercado traveled to Puerto Rico during the period of time that he resided in Florida only strengthens the ties that the defendant has to this jurisdiction. (D.E. 26 in case 12-215 (DRD) at 28).

[5] As part of the government's proffer during the bail hearing, it was argued that Sierra-Mercado has been untruthful as to his Speedway business because even though he report to the Pretrial Services Officer that the business lasted until the year 2002, in 2007 he advised a bank that Speedway was his source of income.

proposed a series of alternatives for purposes of a secured bail, including a debt-free property with an estimated value of $250,000-$300,000 that belongs to his parents; a debt-free parcel of land with an estimated equity of $75,000-$100,000 that belongs to his parents; and guarantors with a combined annual income of $87,220. (D.E. 23-1 at 11). These factors suggest that conditions of release could be fashioned to adequately assure the defendant's appearance to further court proceedings.[6]

As previously stated, however, defendant must remain detained pending trial due to fact that no conditions of release can reasonably provide for the safety of the community. The analysis begins with the fact that the charges in cases 12-215 (DRD) and 12-233 (CCC) are not Sierra-Mercado's first encounters with the law. In the year 1996, he was charged of multiple violations to the controlled substances laws of Puerto Rico, including but not limited to recruiting minors to sell drugs. Although no probable cause was found in various charges and he was acquitted as to others (including the charge of recruiting minors to sell drugs), Sierra-Mercado was convicted for violating Article 406 of the Puerto Rico Controlled Substances Law, for which he was sentenced to serve eight years of probation.

In addition, the offense in case 12-233 (CCC), namely of conspiring to import controlled substances at some point during the year 2006 but not later than March 22, 2006 of said year, occurred while he was on probation at the state level. Therefore, although Sierra-Mercado may have completed his probation term satisfactorily in terms of appearing when required to court proceedings, probable cause has been found by a grand jury that during the latter part his probationary term Sierra-Mercado was engaging in a full-scale conspiracy to import more than five kilograms of cocaine and one kilogram of heroin. This is hardly a satisfactory way to conclude a sentence of probation.

---

[6]During the bail hearing the government made some arguments as to unexplained sources of income, such as for instance, that Sierra-Mercado was seen driving a BMW car, while his common law wife receives food stamps. (D.E. 26 in case 12-215 (DRD) at 20-22). Even though the government's concerns are reasonable, the same could be adequately address – for purposes of flight risk – with highly restrictive conditions of release.

Moreover, the sheer quantity of drugs involved in the offense presents a clear and convincing evidence of the danger to the community that Sierra-Mercado poses. The court needs not to elaborate on the devastating consequences caused by bringing into the borders of the United States 222 kilograms of cocaine and 38 kilograms of heroin, but it will add that these quantities are reflective of somebody who is not a neophyte to the drug-trafficking business and has been entrusted with access to wholesale quantities of controlled substances. The fact that Sierra-Mercado has also been charged with being involved in a conspiracy aggravates the concerns presently at issue "because to unite, back of a criminal purpose, the strength, opportunities and resources of many is obviously more dangerous and more difficult to police than the efforts of a lone wrongdoer." Krulewitch v. U.S., 336 U.S. 440, 448-449 (1949). "Conspiracy in federal law aggravates the degree of crime over that of unconcerted offending." Id. at 449.

> [C]ollective criminal agreement partnership in crime presents a greater potential threat to the public than individual acts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal would accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

Jeffers v. U.S., 432 U.S. 137, 157 (1977) (quoting Callanan v. United States, 364 U.S. 587, 593-594 (1961).[7] Although the fact that several years have elapsed since this conspiracy occurred is relevant for purposes of assessing the potential danger presented by Sierra-Mercado, his underground activities did not stop in 2006. In light of the indictment in case 12-215 (DRD), there is probable

---

[7]Furthermore, defendant, according to the government's proffer, had a leadership role in the conspiracy to import controlled substances to the United States because the drugs that had come from the Dominican Republic had been placed at the residence owned by Sierra-Mercado "at the behest and orders of this defendant." (D.E. 26 in case 12-215 (DRD) at 28).

cause that during the years 2007 and 2008 Sierra-Mercado conspired to commit bank fraud, conspired to submit a false statement to a financial institution, helped others or was helped by others to submit a false statement to a financial institution, and knowingly deposited $100,000 of criminally derived property into his personal account at a local bank.

Finally, regardless of whether the government's contentions made during the bail hearing that defendant was on the one hand claiming to be disabled to drive and yet seen driving shortly before his arrest are accurate or not, the Pretrial Services Report advised that Sierra-Mercado has informed that beginning in 2005 he began having frequent suicide thoughts which lasted until the year 2011. According the information given by Sierra-Mercado to the Pretrial Services Officer, between 2010 and 2011 he also had hallucinations and heard voices.  Although this mental health history in an of itself is insufficient to order Sierra-Mercado detained pending trial, it certainly does not help to assuage the court's concerns with respect to the safety of the community.

In the end, the inquiries boil down to whether Sierra-Mercado has rebutted the presumption of dangerousness to the community triggered by the charge in case 12-233 (CCC) and whether conditions of release could be set to reasonably protect the community when he, a former police officer, has been previously convicted of violating the Controlled Substances Law of Puerto Rico; has been charged of conspiring to import significant amounts of cocaine and heroin when he was still in probation due to a sentence imposed by the Caguas Superior Court; has been charged of conspiring to commit bank fraud and of engaging or attempting to engage in a monetary transaction of property derived from a specified unlawful activity, among other offenses, not too long after he concluded his state probationary term; and has had frequent suicidal thoughts during seven of the past eight years and has heard voices and suffered hallucinations during two of the past three years.

With these circumstances, the answer to both inquiries is no.[8] The motions for bail (D.E. 16 in case 12-233 (CCC) and D.E. 23 in case 12-215 (DRD)) are DENIED.

WHEREFORE, the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendants to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

In San Juan, Puerto Rico, 14th day of April of 2012.

s/ Marcos E. López<br>
U.S. MAGISTRATE JUDGE

---

[8]During the bail hearing, defense counsel requested dismissal of the indictment in case 12-233 (CCC) on statute of limitations grounds. This order expresses no opinion as to the merits of defendant's motion to dismiss said indictment. It is noted, however, that during the bail hearing the government brought to the attention of the court as a response to defendant's motion Title 18, United States Code, Section 3288 and the fact that there had been a previous indictment dismissed without prejudice in case 10-291 (CCC) in October, 2011. (D.E. 26 in case 12-215 (DRD) at 26-27).